## THE NATIONAL UNION BANK AT DOVER v. ANSON G. P. SEGUR.

1. Although a deed is *inter partes*, a covenant therein made with a third person may be enforced by such third person by suit, if it clearly appears by the instrument that it was the intention to confer such right.
2. The mere presence, in such deed, of a covenant with a third person, will *not*, as has been held by many cases, be evincive, by its own force, of such intention.
3. A covenant that confers an immediate, permanent and beneficial effect on the use to which real estate is designed to be applied, will run with the title.

On demurrer to the declaration.

The articles of agreement sued on, commenced in these words, viz. : " Agreement made this, &c., between Anson G. P. Segur, of, &c., of the first part, and Hudson Hoagland, of, &c., of the second part, witnesseth."

The substance of the agreement was, that Segur would sell and convey to Hoagland a certain lot and banking-house. After this stipulation, then followed these recitals and covenants, to wit:

And whereas, the said Segur is now engaged in the business of banking as a private banker in Dover aforesaid; and whereas, the said Hoagland intends to associate himself with other persons to organize a banking association, to be located and to do business in Dover aforesaid, and expects to convey said lot of land and banking-house to said banking association when organized and ready to commence business, to be occupied and used by said association ; and whereas, it is a part of the consideration of this sale of said lot and banking-house, that said Segur shall withdraw from the business of banking, and not engage in the same at any time within ten years in the borough of Dover aforesaid:

Now it is further agreed between the said parties, and said

Segur doth hereby covenant and agree with the said Hoagland, that as soon as said new banking company or association so expected to be organized, or any banking company to whom the said Hoagland, his heirs or assigns, may hereafter lease, convey or assign said premises and banking-house, or any part of the same, shall commence the business of banking therein, then and from thenceforth the said Segur shall withdraw in good faith, as soon as practicable, from the business of banking in said borough of Dover, and shall abstain from receiving or accepting any money on deposit as a banker therein ; and shall not, at any time for the space of the ten years thereafter, engage, directly or indirectly, in the business of banking in said borough of Dover, either as a private banker, a capitalist or as a shareholder or director in or as an officer or employé of any banking company or association, or savings bank, located in or doing business in said borough of Dover; provided, that nothing herein contained shall be construed as preventing said Segur from being a shareholder in or an officer or employé of any banking company or savings bank which may, at any time, be the owner or occupant of the lot of land hereby agreed to be conveyed, or any portion thereof.

And it is further agreed and understood that this covenant on the part of said Segur to abandon, abstain from, and not engage in the business of banking in said borough of Dover for the period of ten years, is made for the benefit of said Hoagland, as the owner of said lot of land and banking-house, and shall attach to and run with the same in the hands of any heir or heirs, assignee or assignees, grantee or grantees of said Hoagland ; and in case of any breach of the same by said Segur, an action may be maintained thereon against him by the person or persons or body corporate who shall, at the time of such breach, be the owner of the fee simple of said lot of land so hereby agreed to be conveyed ; and it is further agreed, in order to insure the observance by said Segur of his said covenant, to abandon, abstain from, and not engage in the business of banking, for the period aforesaid, in Dover aforesaid, that in case of any breach thereof by him, the damages

.to be recovered in any action against him for such breach, shall be and they are hereby fixed and liquidated by the parties hereto at the sum of $10,000.

In witness whereof, the parties have hereunto set their hands and seals the day and year first above written.

(Signed,)          ANSON G. P. SEGUR.      [L. S.]
                   H. HOAGLAND.            [L. S.]

Signed, sealed and delivered in the presence of
Words "according to said plans and specifications" interlined. on second page, and the word "possible" erased, and the word "practicable," on third page, written in its place.

(Signed,)          H. C. PITNEY.

The declaration also showed a conveyance of the premises in question from Hoagland to the plaintiff, and averred that they were still the owners thereof.

Argued at November Term, 1876, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, DIXON and REED.

For the plaintiff, *H. C. Pitney.*

For the defendant, *J. Vanatta,* Attorney-General.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   The contention on the part of the defence, on the argument of this demurrer, was, that the right of action disclosed in the record was not resident in the plaintiff.   The deed in suit, in its commencement, purports to be made between Segur, of the first part, and Hoagland, of the second part; and it was insisted that when a sealed instrument is so conditioned, the suit must be by the formal party to it.   The plaintiff is the grantee of the premises sold to Hoagland, and claims the right to enforce, in its own name, the agreement, by virtue of the last clause in it, which is to the effect that in case of a breach of the covenant now sued

on, the right of action shall be in the owner in fee of the land. Two questions are thus presented to the attention of the court: First, whether, when a deed is in form *inter partes*, and it contains a covenant to a third person, such third person may sue, in his own name, for a breach of such particular covenant, it appearing in the instrument to have been the intention to confer such right; and, second, whether such covenant exists, and such intention appears in the present instrument.

I begin with the first of these propositions.

An examination of the authorities upon the subject will show that the rule is conclusively settled : that the naked fact that in a deed *inter partes*, there is contained a covenant with a third person, will not enable such third person to sue for its breach.   There are a series of English decisions to this purpose, and the later of these treat the doctrine as immovably established.   And in the year 1830, it was so considered by this court, Chief Justice Ewing, in the case of *Smith* v. *Emery*, 7 *Halst*. 60, thus expressing himself: "The instrument of writing set forth in this declaration is what is technically called an instrument *inter partes ;* that is to say, it is expressed to be made between certain parties—between the persons who are named in it as executing it.   In such case, it is a settled rule that although a covenant be expressed in the instrument for the benefit of a third person, an action can be brought in the name of one of the parties only, and not in the name of such third person."   The prevalence of the rule is quite as strongly stated in the case of *Chesterfield et al.* v. *Hawkins*, 3 *H. & C.* 690, and there are a number of American adjudications to the same effect.   The legal doctrine, therefore, as thus stated, and as to the extent stated, should not be considered open to contestation.   It is a purely technical rule, and rests upon authority, and that authority is decisive.

But the question now raised has a further reach.   The counsel of the defendant in this case asks the court to say that the deed being *inter partes*, it is not lawful to make in it a covenant with a third person, and to give, by an expressed intention to that end, a right to such person to sue for its

breach. No precedent has been cited, or has been found, which will stand as a warrant for this contention, and if it is to prevail, it can be only because it is the reasonable consequence of the principle entering into the line of cases just referred to. In this view I have examined those cases with care, and can find in them nothing which would seem to require, from a just interpretation of them, that extended application of their rule which is now claimed. I understand that the reasoning which has led to the result embodied in those decisions to be this : no one can sue on a sealed instrument but a party to it, and the expressed intention of the instrument, with respect to the question of who shall be considered the parties to it, shall prevail over the implied intention springing from a covenant with a third person for his benefit. The inquiry was, as to the intention of the contracting parties, as derived from the instrument, and where the choice lay in solving the question between the formal declaration of the instrument and the testimony of intention arising out of a mere covenant contained in it, with a stranger to it, the former evidence of intent was held conclusive. The leading case upon this subject naturally brought about this result. It is that of Scudamore and others, plaintiffs, and Vandenstene, defendant, being a suit upon a charter-party, and Lord Coke, who reports it in 2 *Inst.* 672, thus states the facts : " The indenture of charter-party was made between Scudamore and others, of the good ship called B, whereof Robert Pitman was master, of the one party, and Vandenstene, on the other party. In which indenture, the plaintiff did covenant with the said Vandenstene and Robert Pitman, and also Vandenstene covenanted with the plaintiff and Robert Pitman, and bound themselves to the plaintiff and Robert Pitman, for the performance of the covenants, in £600. And the conclusion of the said indenture was : ' In witness whereof, the parties aforesaid to these present indentures, have put their seals.' And the said Robert Pitman to the said indenture put his hand and seal, and delivered the same. The defendant, in bar of the said action, pleaded the release of Pitman, &c., where-

upon the plaintiffs demurred.   And it was adjudged that the release of Pitman did not bar the plaintiffs, because he was no party to the indenture."

It will appear at a glance, that the construction put upon this contract was entirely reasonable.   The contract was between the owners of the vessel and the charterer.   The master was not interested in it, and the introduction of his name as a joint covenantee was an act wholly uncalled for, and destitute of all reasonable purpose.   He had released the action, and to have given him the standing of a party to the deed, would have validated that act.   His joinder as a covenantee seemed to indicate that the design was to make him a party to the deed, but, opposed to this indication, was the fact that he had no interest, and the commencement of the deed described, in clear terms, who the parties were, and he was excluded by that description.   Under these conditions, it was held that such exclusive description must prevail.   In searching for the intention, the actual expression of the instrument outweighed the implication arising out of the form of the covenant, and hence the rule of law, when applied to similar cases, in the form we now find it established.   It is true, that in his deductions from this case, Lord Coke seems to intimate an opinion that when the deed is *inter partes*, that no " bond, covenant, or grant can be made to or with any who is not a party to the deed," but, in arriving at this conclusion, he appears to have been misled by his excessive partiality for artificial rules, for he was clearly in error, as was held by the Court of King's Bench, in the case of *Moyle* v. *Ewer*, reported in *Cro. Eliz.* 905, in which, as the report states, it was moved by Coke, Attorney-General, where an indenture of bargain and sale between J. T., of the one part, and J. D., of the other part, and in the end thereof, a letter of attorney to J. N., to make livery, was produced in court, that it should be void, because the attorney was not party to the deed ; but all the court held it to be good enough.   This judgment thus utterly overthrows the notion that where the deed, in terms, declares who are its

parties, it cannot contain a provision conferring a right upon one who does not fall within such description.

Similarly, from the present standpoint, the judicial discussions in *Gilby* v. *Copley*, 3 *Lev.* 138, are instructive. The case is one of mark, and is frequently cited. It was a suit upon articles of agreement between W., of the one part, and C., of the other. It was stated that W. was acting in the interest of one Gilby, and, in the deed, there was a promise on the part of C. to pay Gilby a certain sum of money. Covenant being brought on this promise, in the name of Gilby, the question was, whether such action would lie. The case was never adjudged, but, on the first argument, three of the judges inclined to favor the suit, the fourth judge entertaining the opposite view. The majority of the court appear to have distinguished this case from that of *Scudamore*, 2 *Inst.* 673, which was cited, because the plaintiff, although not the formal party to the deed, was the person beneficially interested in its provisions. The case I consider important, as showing that, so far from it being the common learning, at the time of this suit, that when a deed was *inter partes*, one of such parties could not, by any form of words, bind himself to a stranger, so as to give such stranger a right of suit upon the deed, that a doubt arose in the course of a judicial investigation, whether such an obligation was not created by the insertion, in such deed, of a mere covenant with a third person, who was beneficially interested in the subject matter of the contract. It is true that, at a later date, this doubt was removed, and the doctrine settled, that the existence, in such deed, of a covenant to a third person, having an interest, would not, *per se*, legalize a suit by him; still, the judicial discussion of the question seems to indicate that, at the period in question, the broad doctrine now advanced, that under no circumstances can such an objection arise, was not entertained. If such had been the received opinion, the case just cited, of Gilby *v.* Copley, would have obviously been comprehended in the general rule, and the endeavor to dis-

criminate between it and the decision in the case of Scude-more, would have been entirely futile.

The above are the only cases in the older reports in which the question now considered was directly presented for deci-sion. Other authorities are often referred to in support of the doctrine which denies the efficacy of collateral covenants, but, upon a close scrutiny, they will be found to contain mere *dicta* with respect to that question, and that the points decided bear but a remote affinity to it. Among these is *Cooker* v. *Child*, 2 *Lev.* 74, in which it was decided—the deed not being *inter partes*, and containing a covenant with each of two persons—that either of the two could bring a suit; and also *Salter* v. *Kidgly*, *Carth.* 76, which merely adjudged that one who was no formal party to a deed might covenant, in such instrument, with one who was such party. It is clear that, in these instances, the court was not called on to consider the matter now under examination.

Such I regard the aspect of the ancient cases; nor does it seem to me that the more recent ones put the matter on a different footing. They merely reiterate the rule of decision in the case cited above, from the second volume of the Insti-tutes, that when the premises of the deed are descriptive of the parties, the right of suit is confined to such parties when there is no other evidence in the instrument to give it a different effect than the presence of a covenant moving to a third person. Such is the purport of the decision in *Berkeley* v. *Hardy*, 5 *Barn. & Cress.* 355, and *Metcalfe* v. *Rycroft*, 6 *M. & S.* 75. The consequence is, I do not think the matter is to be considered *res adjudicata* beyond this extent.

The question therefore remains a question to be decided, not upon mere authority, but by the test of legal principles, whether a description in the premises of the parties to a sealed instrument, is an absolute bar to either of such parties entering into an enforceable contract, by the same writing, with a third person. That such covenant, if it exists in a deed in which there is not the usual formula descriptive of the parties, is not in doubt. Full effect to such a covenant was

given in the case just cited, of *Salter* v. *Kidgly, Carth.* 76. The defendant, in that case, was sued on a covenant made by him that a certain tenant would pay his rent. The letting was by deed, and such deed was described as being between the landlord, of the first part, and the tenant, and this same instrument was executed by the defendant, it containing the covenant, on his part, to the effect above stated. It is therefore quite clear that, upon the rule that a suit upon a sealed instrument must be between the parties to it, and that when the premises of such deed describe such parties, such description is absolutely conclusive, the decision in the reported case would inevitably have been, that this action against the collateral covenantor could not be sustained. The reverse of this, however, was decided, the judgment being that one who was "no party to a deed may covenant with another who is a party, and thereby oblige himself by signing the deed." Now, this result, it seems to me, is defensible only on the ground that the question as to who are the parties to a deed must be decided by an interpretation of the instrument in all its parts, with respect to the intention of those who executed it. In the reported case, the deed explicitly declared that it was between A and B; notwithstanding this, the court held it was also a deed between C and A. Looking at the formula of the premises, this judgment was evidently wrong; looking at the expressed intention of the parties, it was as evidently right. This case was beyond the limits of the technical rule, which has been already stated, and, consequently, the manifest purpose of the contracting parties was carried into effect.

The law of this case has never been questioned, and it undoubtedly states the rule as it at present prevails—that is, that in a deed *inter partes,* a collateral covenant of a person with one of such parties, and himself not being one of them, is obligatory, and, if a breach occurs, can be sued on. It is obvious that the point of our present inquiry is but a step from the matter thus adjudged, it being whether this capacity of covenanting, which this case maintains, is inherent in the

person not being a formal party, is not reciprocal between such person and such party. If such third person can make the deed his own, by his covenant and execution, why may not a party to the deed make it his deed, by proper expressions for that purpose, as between himself and such third person? To put the proposition in a clear light—suppose a deed, which in the premises is described as being between A, party of the first part, and B, party of the second part, and, after setting forth certain covenants between the persons thus described, should, in a subsequent part of it, state, in express terms, that the instrument was also a deed between said A and C, and which second statement should be followed by covenants between such last-named persons, can there be a doubt that such instrument would, in law, be regarded as the deed of A, both with respect to C as well as with respect to B? I can have no doubt that such would be the result, for to do otherwise would be to draw the law into a great absurdity. Nothing can be gained by holding that the description of the parties in the premises is so entirely decisive, that the parties to the instrument are absolutely incapacitated from superadding to it the effect of its being their deed, or the deed of one of them, with a third person. We have seen that when such deed has engrafted upon it the covenant of a third person, the description in the premises is not decisive, for the instrument is not merely the deed of the formal parties to it, but is also the deed of such third person. In like manner, good sense would seem to dictate that where the intention is clear, the instrument may stand as the deed of one of the formal parties to it with a third person. The rule that a mere covenant with a third person will not manifest such intention, is entirely technical, and rests more upon authority than right reason, and should not be pushed beyond the very letter of the decisions in which it inheres. Consequently, my conclusion is, that there is nothing in the mere form of this deed with respect to the description of its parties, which, as an inflexible rule of law, debarred the defendant from

National Bank at Dover v. Segur.

entering into a covenant in it with the plaintiffs, which would give to them, on its breach, a right of action.

The second question is, has the defendant made such covenant in such clear terms as to take it out of the technical rule above stated?

With respect to this, I think there can be no question. The agreement, in the clearest terms, declares that the covenant to abandon, abstain from, and not engage in, the business of banking, is made for the benefit of Hoagland, as the owner of the lot of land and banking-house, and shall attach to, and run with, the same in the hands of any heir or heirs, assignee or assignees, of said Hoagland; and in case of any breach of the same, an action may be maintained thereon by the person who shall be the owner of the fee at the time of such breach. These are not set phrases, which are necessary, in law, to the creation of a covenant; any language in the deed, importing an obligation, is sufficient. The language above recited, construed in this light, can have but one interpretation. The stipulation that the covenant should run with the land, carried all the rights under it to the grantee of such land, for, as the original covenantee had also agreed that in case of a breach of this covenant, the right of suit should rest in the owner of the fee, he had, by transferring the title to the land, parted with his right to enforce this part of the agreement.

But again, even if I had yielded to the view so forcibly presented to the consideration of the court, which is directly opposite to that just expressed, and had concluded that the plaintiff was not a party to this agreement, so as to give him an ability, as such, to sue upon it, yet, nevertheless, I should have thought this action maintainable.

This result, in my opinion, would have been justifiable, on the ground that the covenant forming the basis of this suit is, in law, capable of running with the land, and that, if it is to be regarded, technically, as a covenant between the formal parties to the deed, it has passed, with the title, to the present plaintiff.

The doctrine with respect to what agreements will so attach to real estate as to devolve with the title, has been a fruitful subject of discussion in the text-books, as well as in judicial opinions, and, since the various resolutions in Spencer's case, has given rise to a long line of decisions, which, it must be admitted, it would be difficult entirely to harmonize. But I think this discord will be found, upon a careful examination of the authorities, to prevail chiefly in other branches of the subject than in the one in which the present case is to be classed. There is such an essential difference, in social effect, between permitting a *burthen* to be annexed to the transfer of land, and the giving to a *benefit* such a quality, that the subject will unavoidably run into obscurity, unless the distinction is kept constantly in view. The conspicuous impolicy of allowing land to be trammeled in its transfer, to the extent that previous owners may choose to affect it by their contracts, was pointed out and condemned in the case of *Brewer* v. *Marshall*, 3 *C. E. Green* 337 ; 4 *Id.* 537. In that case, the owner of real estate sold a portion of it, and covenanted with the purchaser that neither he nor his assigns would sell any marl from off the residue of the tract. The suit was against the alienee of the vendor, and the decision was that such a burthen would not follow the land into the hands of such alienee of the covenantor. The reason assigned for this conclusion was the public inconvenience that would result if incidents could be annexed to land " as multiform and as innumerable as human caprice." But when we turn our attention to the consideration of those covenants, which, instead of being burthensome to the land, are beneficial to it, we perceive, at once, that such objection does not apply. Such covenants do not hinder, but rather facilitate the transmission of land from hand to hand, and, therefore, with respect to their transmissibility, the question of public convenience has no place. This being the case, it is not easy to see why any contract, which is of a nature to attach to the land, and which has a beneficial tendency, should not be considered assignable, by act of law, as against the covenantor,

with the title. In every instance where the question, in this form, is presented, the suit being between the original covenantor and the alienee of the covenantee, if the making of the covenant be not denied, the sole point for solution would seem to be whether such covenant, in the legal sense, relates to or concerns the land, for, if not, by its quality, it passes as an incident to the property, and is enforceable in the name of the person who is owner at the time of its breach. When the covenantor has been the party sued, and the covenant admittedly related to the land, the alienee of the covenantee being the plaintiff, I think no considered case has held that such action was not maintainable. In the present case, it is conceded that the parties to the suit have these characteristics, but it is denied that the covenants are of a nature to run with the land.

It is insisted that these covenants "relate to future personal acts and omissions of the covenantor; that those acts are not to be done or omitted on the land conveyed, nor on any other land of the grantor or grantee; nor are the covenants with the heirs or assigns of Hoagland"; and, in support of these objections, the first and second resolutions in Spencer's case are cited.

But none of these positions are sustained, or in any degree sanctioned, by the authority referred to, that authority being merely to the effect that a covenant will not run with the land if it relates to personalty, or if it be merely collateral to the land. But I fail to find that Sir Edward Coke says anything which lends the slightest countenance to the idea that the covenant is not transmissible if it stipulates for "the future personal acts and omissions of the covenantor," or if "those acts are not to be done or omitted on the land conveyed, or on any other land of the grantor or grantee." It is true that he does declare that, in certain cases, the burthen of a covenant will not fall on the assignee of the covenantor, unless such assignee be expressly referred to in the covenant; but as this suit is against the covenantor himself, and not

against his assignee, that doctrine can serve no purpose in this connection.

But Lord Coke, in the case cited, states, as one of the judicial resolutions, that a covenant will not run with the land "if the thing to be done be merely collateral to the land, and doth not touch or concern the thing demised in any sort," and, consequently, the inquiry is presented with regard to the nature of the present covenants in relation to the premises conveyed; and this inquiry has been pressed, with earnestness, on the attention of the court in the brief of the counsel of the defendant. I must say, however, that but for this urgency, it would not have occurred to me that any doubt could be entertained with respect to the question. I understand that a covenant touches and concerns land when its performance confers a direct benefit on the owner of land by reason of his ownership; and, tested by such a definition, the covenant sued on has clearly such a capacity. To be sure of this, we have but to turn to the contract. That agreement is for the sale and conveyance of the premises in question, which are described as a lot upon which is a building, adapted to the business of banking, in the course of erection, and which, it is stated, the defendant is to complete, and which was to include "a counter for the main banking-room," which "had already been ordered" by him. It is then recited that the defendant was then engaged in the business of banking, as a private banker, in Dover; and that Hoagland, the covenantee and grantor of the plaintiff, intended to associate himself with other persons to organize a banking association, to be located and to do business in Dover; and that he expected to convey said lot of land and banking-house to said banking association; and that it was a part of the consideration of the sale of said lot and banking-house, that the said defendant would withdraw from the business of banking, and would not engage in the same, at any time within ten years, in the borough of Dover. After this, follow the covenants, which lay the ground of suit, to the purport that the defendant, " as soon as the new banking company or association, so expected to be organized,

or any banking company to whom the said Hoagland, his heirs or assigns, may hereafter lease, convey or assign said premises or banking-house, or any part of the same, shall commence the business of banking therein, then and from thenceforth," the said defendant "shall withdraw, in good faith, as soon as practicable, from the business of banking," &c. To this, there is superadded a stipulation that it is understood and agreed that the foregoing covenant is made for the benefit of said Hoagland, as the owner of the land to be conveyed, and is to attach to and run with the same.

In view of these stipulations and recitals, it is undeniably clear that the parties to this contract thought that the covenant in question was one which would appertain to and benefit, not merely the person of the grantee, but the land itself, which was to become his by a conveyance. Indeed, it was made such an appurtenance to the property that it was to have no effect until the business of banking was commenced upon these particular premises. Now, while it is plain that a mere personal covenant cannot, by the agreement of parties, have its nature so altered as to make it transmissible with land, nevertheless when the question is whether the given covenant does concern certain premises, the fact that such parties considered it to have such quality, should be potent in a decision of the inquiry. Since these parties most manifestly have thought that the stipulation in question gave additional value to the property, why, and on what ground, should the court declare that such was not the case? Nor is it perceived that there is any force in the suggestion that this covenant would affect, not only the business done upon these particular premises, but any other banking business that might be carried on in the vicinity, for the answer to such objection is, that such incidental effects are common to all agreements that in any wise regulate the dealings of men; and that the rule of law requiring the covenant to touch or concern the land, does not require that it shall touch or concern nothing besides. In the present instance, this covenant will have an immediate, permanent and beneficial effect upon the use to which the land is

to be put, and that is sufficient to annex it to the title. To apprehend how closely this stipulation is related to these premises, we have but to observe that in case of its breach, the party directly, and for aught that the court can know, exclusively injured, will be the owner of the property at the time such breach shall occur. There is nothing in the pleadings to show that, upon such violation of this agreement, the original covenantee, or any other person but the plaintiff, has sustained, or can sustain, the least inconvenience or injury. And, finally, it should be observed that, under the circumstances of this case, it is necessary to hold that the covenant under consideration, has capacity to run with the land, in order to give damages to the only party actually grieved by its non-performance.

This conclusion is, I think, amply sustained by the decisions. It is not necessary to review them. The following seem to me directly to the point: *The Prior's case*, reported in the seventh resolution in Spencer's case, 1 *Smith's Lead. Cas.* 118; *Vyvyan* v. *Arthur's Adm'rs*, 1 *Barn. & Cress.* 410; *Vernon* v. *Smith*, 5 *B. & Ald.* 1; *Mayor of Congleton*, 10 *East* 130; *Norman* v. *Wells*, 17 *Wend.* 137; 1 *Smith's Lead. Cas.* 142.

Having carefully examined the cases cited in the brief of the counsel of the defendant, I shall dismiss them with the observation that they seem to me plainly to be covenants relating to personalty, or covenants entirely collateral to the land, or cases pertaining to the question when covenants will pass as a *burthen* with the title.

Another objection taken to this suit is, that the agreement in question, and every part of it, was prospective and executory, and at the time it was entered into, no title to the lands existed, or was transferred to Hoagland, the covenantee.

But I find no authority for this proposition. The adjudications appear, on the contrary, to show very plainly that when a covenant beneficial to land is made, it is not essential to its devolution with the title that the covenantee should have title to the land to which it relates, or that the estate should have come from the covenantor, or should have passed from

him, *eo instanti*, with the inception of the covenant.   When, therefore, the covenantee in this case became vested with the title, the covenant, as it touched and concerned the land, became an incident to such land, and as such, passed with it, upon conveyance, by act and operation of law.

On the one or other of these grounds, the declaration, in my opinion, must be upheld.