ESTHER A. GRISCOM

*v.*

JEAN BARCELONNE and AMBASSADOR HOTEL CORPORATION.

[Submitted June 20th, 1919. Determined July 2d, 1919.]

1. The fact that a grantor, at or about the time it conveyed a block of lots with a restrictive covenant, conveyed to the same person another adjacent block of lots without the restrictive covenant, constitutes no defence to the right of an owner of one of the lots in the restricted block to enforce the restrictive covenant.

2. A hotel company which had no public bar and no place where liquor could be purchased except as it was ordered for service at a table, and served from a room to which the guests had no entry, was running a "public drinking house" within the restrictive covenant in the deed under consideration.

3. A restrictive covenant in a deed will not be enforced unless its meaning is clear and free from doubt.

4. A covenant in a deed that the grantee shall not use the premises described to erect on said premises any building to be used for certain purposes, does not relate alone to the erection of a building for any of the purposes named, but prohibits such use of buildings already built.

On bill for injunction.   On hearing on return of order to show cause for injunction *pendente lite.*

*Mr. Norman Grey* (by *Mr. Albert E. Scheflin*), for the complainant.

*Mr. Clarence L. Cole,* for the defendants.

LEAMING, V. C.

By the bill filed herein complainant seeks to enforce the observance of a restrictive covenant contained in deeds of conveyance of what is commonly known as the Chelsea tract at Atlantic City.   Defendant hotel company has erected a hotel upon its property and has procured a license for the sale of intoxicating liquors therein.   The bill seeks to prevent such sales.

The following covenants, among others, are contained in the deed under which defendant company holds title to the lots on which its hotel is erected:

"It being expressly understood and agreed that the said grantee and his heirs and assigns shall not at any time hereafter use said premises to erect or cause to be erected or set up upon said premises any building to be used as a house of prostitution, gambling-house, public drinking-house or other establishment in the nature thereof   *   *   *.

"And it is expressly understood and agreed that the said several covenants on the part of the said party of the second part above specified shall attach to and run with the land, and it shall be lawful not only for the said The Chelsea Beach Company and their successors and assigns, but also for the owner or owners of any lot or lots adjoining in the neighborhood of the premises hereby granted deriving title from or through the said The Chelsea Beach Company to institute and prosecute any proceedings at law or in equity against the person or persons violating or threatening to violate the same, it being understood, however, that this covenant is not to be enforced personally for damages against the said party of the second part, his heirs or assigns, unless he or they be the owner or owners of the said premises, or some part thereof, at the time of the violation of the said covenant or of a threatened or attempted violation thereof; but said covenant may be proceeded in for an injunction of and for a specific execution thereof against the said party of the second part, his heirs and assigns, and for damages against the party or parties violating the said covenants or their heirs, executors or assigns.   The object of these covenants being to secure the health, beauty, ornamentation and value of the premises."

It will be observed that defendant has not only covenanted that the covenant here in question shall "attach to and run with" its land, but also that the owners of any lot or lots adjoining in the neighborhood of defendant's lots deriving title from the Chelsea Beach Company may prosecute a suit in equity to restrain defendant from violating the covenant. Complainant owns such lots and derives title from the Chelsea Beach Company.

August 22d, 1893, the Chelsea Beach Company conveyed a large tract of land, which embraced both complainant's and defendants' lots, to Clement J. Adams by deed containing the covenants above quoted; on the same day Adams conveyed the same tract to the Chelsea Land and Improvement Company by deed of conveyance containing the same restrictive covenants, and thereafter that company made sales of lots comprised within the tract by deeds of conveyance containing the same covenants; complainant and defendants respectively hold under the Chelsea Beach Company by chains of title in which all the conveyances contain the covenant here in question.

The bill does not specifically aver that the Chelsea Beach Company or the Chelsea Land and Improvement Company determined upon a general scheme or plan of development of the tract covered by the deeds above referred to through the medium of these restrictive covenants; but it seems clear that by the terms of the covenants contained in the deeds held by complainant and defendant respectively, and contained in all the deeds in their respective chains of titles, a right is conferred upon each to enforce against the other the observance of these covenants. The circumstance urged by defendant that the Chelsea Beach Company at or about the same time it conveyed to Adams the tract above referred to, with the restrictive covenant imposed on the tract so conveyed, conveyed to Adams an adjacent tract without restrictive covenants, and that on part of the latter tract liquor has been sold, appears to me to constitute no defence to the present right of complainant to enforce the covenant against defendant.

It is further urged by defendant that the hotel owned by defendant is not a "public drinking-house." This claim is based upon an affidavit disclosing that the hotel of defendant has no public bar or buffet, "and no place where any guest can purchase

liquor except as it may be ordered for service at a table and served not from a bar or buffet but from a room to which the guest or patron has no entry." The covenant, in its terms, forbids a "public drinking-house or other establishment in the nature thereof." The defensive claim is that since a patron for drinks must be seated at a table and have his drinks served at the table from a room to which the public has no access, the house cannot properly be regarded as a public drinking-house or as an establishment of that nature. It is not claimed that the drinks are only served with meals; the distinctive feature urged is that the drinker must sit and drink at a table and is not permitted to enter the room from which the drinks are served. Whether the public will drink less when required to sit in a room removed from the inspiring glitter of a bar does not appear; yet that seems to me to be the only element that can be regarded as a substantial distinguishing feature of the two situations. Unless it can be shown that this sacrifice of bar-glitter has prevented or will prevent public patronage for drinks, I am unable to adopt the view that a hotel with license to sell intoxicating liquors and which proposes to sell in the manner described by defendant is not a "public drinking-house" or an "establishment of that nature."

The further claim is made by defendant that the covenant is restrictive only of the erection of a drinking-house and not restrictive of its use. The well-established rule to the effect that a covenant of this nature will not be enforced unless its meaning is clear and free from doubt is relied on. But the claim that this covenant merely forbids the erection of buildings suitable for use for the purposes named, and does not forbid their use for those purposes after erected, appeals to me as wholly without substance. The covenant is:

"Shall not at any time hereafter use said premises to erect or cause to be erected or set up upon said premises any building to be used as a house of prostitution, gambling-house, public drinking-house or other establishment in the nature thereof."

There are no distinguishing architectural features of a gambling-house or a house of prostitution or a building to be used as a

public drinking-house. A bar, if it appeared in the designs, might distinguish the latter, but the bar would yet be harmless unless and until used as such. Any building, however constructed, and for whatever innocent purpose constructed, might be used for any of the purposes named. The covenant cannot, in my judgment, be understood as relating alone to the erection of a building for the purposes named without wholly disregarding its obvious purpose and intent; its plain meaning, as it would necessarily be understood by any person entering into it, is to inhibit the use of establishments of the nature specified.

I will advise an injunction pursuant to the prayer of the bill.