FREDERICK HEMSLEY, appellant,

*v.*

MARLBOROUGH HOUSE COMPANY, respondent.

[*Argued November 25th and 28th, 1904.   Decided June 19th, 1905.*]

1. D., the owner of two lots upon opposite sides of a public street, conveyed one of them to F.   The conveyance contained a restrictive covenant prohibiting the erection of any building or improvement thereon, outside of certain prescribed limits, without the consent of D. or her heirs.— *Held*, that the restrictive covenant was inserted in the conveyance for the benefit of the lot retained by D. as an appurtenance thereto.   *Held further*, that by the conveyance of the retained lot, the right to enforce the restrictions passed to the grantees of that lot.

2. A grant by a number of property owners to a municipality of the right to construct a boardwalk or esplanade across the properties of the several grantors, the right being reserved to the grantors to connect their respective buildings with such boardwalk, has no effect, either by way of release or otherwise, upon the rights of the grantors, *inter sese.*

3. A purchaser of lands has constructive notice of restrictions limiting the right to erect buildings thereon when they appear in the direct chain of his title, and is chargeable with knowledge of the purpose for which they were inserted in the deed in which they are contained.

On appeal from a decree advised by Vice-Chancellor Reed, whose opinion is reported in *65 N. J. Eq. (20 Dick.) 167.*

Mr. *Gilbert Collins* and Mr. *Joseph H. Gaskill,* for the appellant.

Mr. *Richard V. Lindabury* and Mr. *Clarence L. Cole,* for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

On the 15th of October, 1883, one Mary Disston conveyed to the Female Academy of the Sacred Heart a piece of property located upon the westerly side of Park place, in the city of Atlantic City. The deed of conveyance contained several restrictive covenants, one of which (a covenant restricting the erection of any building except a dwelling-house upon the premises) has already been before the court of chancery and this court for construction. *Hemsley* v. *Marlborough Hotel Co., 62 N. J. Eq. (17 Dick.) 164; S. C. on appeal, 63 N. J. Eq. (18 Dick.) 804.* The present bill is filed to compel the taking down by the defendant company (the present owner) of certain portions of its hotel building and the removal of a boardwalk constructed by it upon the premises, because in building these structures it violated two other of these restrictive covenants, which are in the following words, viz.:

"That no building or improvement of any kind shall be erected on the said plot of ground, more than two hundred feet, without the consent of Mary Disston or her heirs, beyond the southernmost boundary line of lot of Amelia R. Sparks, looking toward the ocean, nor within a space of fifteen feet from the westerly side of said Park place."

It appears from the proofs submitted that at the time of making this conveyance Mary Disston was also the owner of a property upon the easterly side of Park place known as the "Disston Cottage" property, a portion of which was directly opposite the northerly part of the plot conveyed by her to the Female acad-

emy, and that subsequently, and after the death of Mary Disston, this latter property was conveyed to the complainant by her executor and trustee. It further appears that the defendant company, the present owners of the Female academy plot, by mesne conveyances from that society, have erected a hotel upon it; that certain bay-windows of this building project somewhat (from one to two feet) over a line drawn parallel with and fifteen feet west of the westerly line of Park place; and that a portion of the easterly wall of the said building is also slightly over this line. It was further shown that on the south side of the building the piers supporting the piazza extend at some points about two feet beyond a line two hundred feet south of the Amelia R. Sparks line, and that the cornice of the piazza also extends over that line some three or four inches. In addition to these facts, it was further shown that the defendant has erected upon that part of this property lying south of a line two hundred feet south of the Sparks line an elevated boardwalk, leading from the southerly piazza of its hotel to the Atlantic City esplanade, or "boardwalk."

The complainant's contention is that these erections are in violation of the restrictive covenants above set out, and that he, as the present owner of the "Disston Cottage" property, is entitled to the relief which he asks by this proceeding. He rests his right to that relief upon several grounds, only one of which need be referred to in determining this case, namely, that the covenants, the violations of which he complains, were put in the deed made by Mary Disston to the Female academy, not for her personal benefit, but for the benefit of the "Disston Cottage" property now owned by him.

The learned vice-chancellor who heard the case below advised a decree dismissing the complainant's bill. He seems to have considered that the clause "without the consent of Mary Disston or her heirs" was applicable only to the restriction which prohibited the erection of any building or improvement more than two hundred feet south of the Sparks line, and not to that which prohibited any such erection within fifteen feet of the westerly line of Park place. For this reason he considered that, so far as the latter restriction was concerned, the case was ruled

by the earlier decision in the litigation between these parties already adverted to. He further considered that the restriction against building more than two hundred feet south of the Sparks line was inserted for the personal interest of Mary Disston and her heirs, not for the benefit of the "Disston Cottage" lot; that it did not become attached to that property and did not pass to the purchaser of that land.

We are not able to concur in the view expressed by the vice-chancellor as to the limitation providing for the consent of Mary Disston or her heirs. The natural meaning of the provision containing the restrictions seems to us to be that no building or improvement of any kind shall be erected upon the plot conveyed more than two hundred feet south of the Sparks line, nor within fifteen feet of Park place, without the consent of Mary Disston or her heirs. The determination of the whole case, therefore, must turn upon the effect to be given to this consent clause—that is, whether it was inserted in the deed for the benefit of the "Disston Cottage" property, or merely for the personal benefit of Mary Disston and her heirs. We dissent from the conclusion of the learned vice-chancellor that the right reserved is a personal one. The reservation to "heirs" implies an heritable interest, and an heritable interest is one which is attached to the ownership of land. The only land of Mrs. Disston for the benefit of which the clause under consideration could have been inserted, so far as the proofs disclose, was the "Disston Cottage" property. That it is useful and beneficial to that property, providing for it better light, air and prospect, is obvious; and, therefore, although the clause does not say, in terms, that the right of consent is reserved to Mrs. Disston and her heirs as owners of this property, it seems to us that this is the necessary implication. To disregard the effect usually attributed to the word "heirs," when used as it is in the restriction before us, and to hold that the right therein reserved is personal to Mrs. Disston and her heirs, is to conclude that it was the intention of the parties to the conveyance that although Mrs. Disston might part with the "Disston Cottage" property the day after the making of the conveyance now under consideration, nevertheless the right to enforce these restrictions against the owners of the defendant's

property should remain to her as long as she should live and to her heirs afterwards until the death of the last survivor of them. The fact that there could be no object in such a stipulation condemns such a construction of the reservation. *Jones Real Prop.* § *775; McLean* v. *McKay, L. R. 5 P. C. App. Cas. 327; Peck* v. *Conway, 119 Mass. 546.*

Holding, as we do, that the right reserved by Mrs. Disston was, as owner of, and for the benefit of, the "Disston Cottage" property, it follows that this right is an appurtenant to that property, and passed with it by the conveyance made to the complainant by her executor and trustee. *Perry* v. *Pennsylvania Railroad Co., 55 N. J. Law (26 Vr.) 178; .Peck* v. *Conway, supra.*

It is contended on behalf of the defendant that if by the true construction of the deed from Mrs. Disston to the Female academy the restrictive covenants which we have discussed inure to the benefit of the grantees of the "Disston Cottage" property, the requisite consent of the complainant was given to the construction of the boardwalk south of the two hundred feet limit by the execution, by certain property owners, including the complainant and the grantors of the defendant company, of a conveyance to the city of Atlantic City, which was offered in evidence. By the terms of this conveyance the city was authorized to construct a "boardwalk" or esplanade along the ocean front across the property of the grantors. It contained a covenant that the grantors therein should have, at all times, "the right to connect their, and each of their, buildings with the said 'boardwalk' (or esplanade) on the northwest side thereof." But, as we read this covenant, it merely reserves to each grantor a right to make the connection named without further consent from the city; it has no effect, by way of release or otherwise, among the grantors *inter sese.*

Another contention advanced by counsel for the defendant is that the defendant company had no knowledge, at the time it purchased the Female academy tract, that these restrictive covenants in the deed to that society had been inserted in it for the benefit of the "Disston Cottage" property, and therefore is not affected by them. The answer to this contention seems to us to

be that *knowledge* of this fact was not necessary in order to bind the defendant company. It had *notice* of the existence of these restrictions, for they appear in the direct chain of its title, and, having notice, it is chargeable with the pertinent facts which inquiry would have revealed to it—in other words, with the purpose for which these restrictions were inserted in the deed.

But although we reach the conclusion that the right to enforce these restrictive covenants against the owner of the defendant's property passed to the complainant as the grantee of the "Disston Cottage" plot, we do not consider that it would be equitable, at this time, to grant a mandatory injunction against the defendant company requiring it to tear down so much of its hotel building as extends beyond the prescribed lines. Apparently the violations of the restrictive covenants in this respect were accidental; no objection to this feature of its construction seems to have been made by the complainant during the process of its erection; the injury inflicted upon the complainant's property by these infractions of the covenants is almost infinitesimal, and the loss which would be entailed upon the defendant by tearing away these portions of its building would be very considerable.

The same conditions, however, do not exist with relation to the boardwalk connecting the defendant's hotel with the Atlantic City esplanade. The structure is a material encroachment upon the restricted property and we cannot say that it is not a substantial detriment to the complainant's premises. So far as this structure is concerned, therefore, the complainant is entitled to the relief which he seeks.

The decree below should be reversed and a decree entered in conformity with the views herein expressed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—12.