FRANK SAILER

*v.*

EMMA L. PODOLSKI.

[Submitted October 20th, 1913. Determined October 29th, 1913.]

1. Where, of the thirty-three lots comprising a tract, eighteen of them were sold with restrictive building covenants and fifteen without such covenants, seven having been sold without restriction at the time of the purchase by complainant's grantor, it could not be said that the lots were sold under a general development scheme so as to impose such

restrictions upon all of the lots, though all of the six lots, on the avenue on which complainant's were, were subject to the same covenants as in complainant's deed.

2. Where there was no 'general scheme of development of a tract divided into building lots, so as to make building restrictions in the deed of a common grantor inure to the benefit of all subsequent purchasers, the burden was upon a lot owner to show that a covenant by defendant's predecessor in title was made for the benefit of subsequent purchasers of the lot later conveyed to complainant.

3. Where the common grantor in a deed to defendant's predecessor in title containing restrictive building covenants did not bind himself therein to perpetuate the covenants in favor of subsequent purchasers of the remaining portion of his land and the covenants did not purport to be for the benefit of subsequent purchasers of any unsold lots—*Held*, purely personal covenants between the grantee and the grantor in such deed.

4. If a restrictive building covenant provides that it is intended for the benefit of subsequent purchasers of the grantor's remaining land, it may be enforced by such subsequent purchasers against prior purchasers from the common grantor.

5. If a common grantor has adopted a ·general development scheme and all of his deeds to the land contain restrictive building covenants, each purchaser may enforce such covenants against all other purchasers, whether subsequent or prior to his own purchase.

6. That a common grantor of land inserted a restrictive building covenant in a subsequent conveyance of a part of a tract similar to that inserted in a prior conveyance would not of itself show a purpose to make the covenant in the prior conveyance enforceable by subsequent purchasers.

7. The fact that a common grantor retained a lot adjacent to a lot conveyed with restrictive building covenants would not of itself show that the covenants were intended by the parties to the deed to be enforceable by a subsequent purchaser of the lot retained.

8. Before a court of equity can be justified in restricting another in the uses to which he may lawfully put his property by reason of the existence of restrictive building covenants, the right of complainant to relief must be made entirely clear.

---

On final hearing on bill for injunction to restrain violation of restrictive building covenants.

*Mr. Theodore W. Schimpf* and *Mr. James M. Sheen,* for the complainant.

*Messrs. Bourgeois & Coulomb,* for the defendant.

LEAMING, V. C.

The restrictive building covenants which this suit seeks to enforce are quoted in *Sailer* v. *Podolski, 81 N. J. Eq. (11 Buch.)* 327. That preliminary hearing proceeded upon the then uncontroverted assumption that these covenants formed a part of a general scheme for the development of the tract; for that reason complainant's right to enforce the covenants was not then questioned.

The proofs taken at final hearing disclose that these covenants cannot be sustained and enforced upon the theory of a general scheme of development.

In the year 1901 Petroff and Newton owned a wild tract of land and laid it out into thirty-three building lots for the purpose of making sale of the lots. Streets were by them projected on three sides of the property and a street projected through it; in this manner street fronts were provided for all the lots. All of these lots have since been sold. The conveyance from these common owners to defendant's predecessor in title was dated December 16th, 1901, and contained the restrictive covenants referred to. The conveyance from the common owners to complainant's predecessor in title was dated May 19th, 1902, and contained similar covenants. When this conveyance was made by the common grantors to complainant's predecessor in title seventeen of the lots had been conveyed by the common grantors by deeds containing restrictive covenants and seven without restrictive covenants. A month later the remaining eight lots were conveyed by the common grantors without restrictive covenants. It thus appears that in a tract comprising thirty-three lots eighteen lots were conveyed by deeds with restrictive covenants and fifteen without; and at the time of the purchase by complainant's predecessor in title seven lots had been conveyed free from restrictions. When complainant purchased from her predecessor in title fifteen, or nearly one-half of all the lots comprising the tract, had been conveyed by the common grantors free from the operation of restrictive covenants. It seems clearly impossible to regard an enterprise which has been developed in the manner stated as one embracing the necessary elements of a general scheme or plan to sub-

ject the several lots of the tract to the operation of uniform restrictions. The elements necessary to render a general scheme operative to bestow upon each lot owner the right to enforce the restrictions against all other lot owners are clearly defined in *De Gray* v. *Monmouth Beach, 50 N. J. Eq. (5 Dick.)* *329, 340.*

It is urged that as the lots of complainant and defendant face on Atlantic avenue, and all of the six lots facing on that avenue are subjected to the same restrictive covenants as are found in the deeds of complainant and defendant, the conclusion is justified that that part of the tract was subjected to a general scheme of development which failed only as to the remainder of the tract. I am unable to adopt that view. There is nothing to indicate that any defined purpose existed or was recognized in relation to any segregated portion of the tract different from the other portions of the tract except the mere circumstance that the deeds for these six lots facing on Atlantic avenue are now found to have contained the restrictive covenants.

As complainant's right to enforce defendant's covenants cannot be sustained as a right emanating from a general scheme of development, it follows that it can only be sustained upon the claim that defendant's covenant was entered into for the benefit of subsequent owners of the lot subsequently conveyed by the common grantors to complainant's predecessor in title and thereafter conveyed to complainant. The deed from the common grantors to defendant's predecessor in title was dated December 16th, 1901; the deed from the common grantors to complainant's predecessor in title was dated May 19th, 1902. In *Hemsley* v. *Marlborough Hotel Co., 62 N. J. Eq. (17 Dick.)* *164, 170;* affirmed in *63 N. J. Eq. (18 Dick.)* *804,* it is held that in a case of the nature stated the burden rests upon complainant to establish that the covenant was made by the prior grantee of the common grantor for the benefit of the subsequent purchasers of the lot owned by complainant. In *McNichol* v. *Townsend, 73 N. J. Eq. (3 Buch.) 276,* *Hemsley* v. *Marlborough Hotel Co., supra,* was followed, and it is there also pointed out that no presumption arises from such a covenant that it is for the benefit of subsequent purchasers of the remaining land of the common grantor, and that in the affirmance of *Renals* v.

*Cowlishaw*, reported in *11 Ch. Div. 866, 868*, it is stated that to enable the subsequent purchaser to take the benefit of restrictive covenants of a prior purchase, there must be something in the deed containing the covenants to define the property for the benefit of which the covenants were entered into. The covenants contained in the deed of conveyance from the common grantors to defendant's predecessor in title are solely covenants of the grantee; grantors neither bind themselves to enforce or perpetuate the covenants against their grantee and his assigns nor to create or enforce similar or any covenants against subsequent purchasers of other parts of their land, nor do the covenants in any way state that they are for the benefit of subsequent purchasers of all or any part of the unsold lots of grantors; the covenants are in form purely personal covenants of the grantee to his grantors, restricting the manner in which the grantee should use the land granted. If these covenants were intended by the parties to embody stipulations which were not expressed, if they were intended by the parties to include by implication the stipulation that they were for the benefit of the purchasers of all or some particular portion of the unsold lots of the grantors, or were to be enforceable at the instance of subsequent grantees of remaining lots, the accurate ascertainment of that intention is clearly necessary to clothe the subsequent purchaser with the right of enforcement of the covenants. This has been the view uniformly accepted by the courts of this state from *Coudert* v. *Sayre*. *46 N. J. Eq. (1 Dick.) 386*, and *De Gray* v. *Monmouth Beach, 50 N. J. Eq. (5 Dick.) 329*, to the present time.

Where the restrictive covenant of the prior purchaser expressly provides that it is intended for the benefit of subsequent purchasers of the remaining land of the common grantor or so declares by providing that it may be enforced by such subsequent purchasers, it may be enforced by such subsequent purchasers against such prior purchasers. This is clearly pointed out in *Coudert* v. *Sayre, 46 N. J. Eq. (1 Dick.) 386, 392*, and has been at all times uniformly recognized as the settled law of this state.

And where a general building or development scheme has

been adopted by the common owner and perpetuated through the medium of uniform restrictive covenants in all deeds made by such common owner, each purchaser may enforce the uniform covenants against all other purchasers irrespective of the time of order of their respective purchasers, because such a general scheme can only exist as such by reason of its necessary comprehension of the plan to subject the entire tract to the operation of the uniform covenants.

But where there is no such general scheme and where neither the instrument containing the covenant nor any other instrument provides that similar covenants shall be inserted in subsequent deeds to be made by the grantor of his remaining land nor in any other way restricts the grantor in the use or disposition of his remaining land, nor provides that the covenant is for the benefit of subsequent purchasers of all or any part of the unsold land of the grantor, nor that it may be enforced by such subsequent purchasers, it may well be doubted whether any satisfactory ground can be found to support a claim of right of a subsequent purchaser from the grantor to enforce the covenant. As already suggested, to sustain such claim of right there must be read into the written contract by way of construction from the light of surrounding circumstances an engagement or stipulation or purpose which the parties to the contract did not express. It seems at least clear, upon principles which scarcely need be stated, that the subsequent conduct of the grantor in inserting a similar covenant in a subsequent conveyance of a part of the tract cannot be properly regarded as a circumstance in aid of the intention or purpose of the parties to the prior deed. Nor does it seem to me that the circumstance that the grantor retained a lot adjacent to and similar to the lot conveyed can justify the conclusion that the covenant was mutually intended by the parties for the benefit of and to be enforceable by a subsequent purchaser of the lot so retained. The prior purchaser may well have refused to enter into a covenant broader than that contained in his deed, and the grantor may well have had no purpose to exact a covenant other than one purely personal to himself. The mutual purpose that the

covenant should import no more than it expressed and should be purely personal and should not inure to the benefit of or be enforceable by a subsequent purchaser of the remaining adjacent lot, may well have entered into the consideration price of the purchase. Reported cases are to be found in which the writers of the opinions appear to have suggested the possibility of the existence of surrounding circumstances adequate to justify a judicial determination that a restrictive covenant of the nature of the one here in question was intended by the parties for the benefit of the unsold land of the grantor and could, in consequence, be enforced at the instance of subsequent purchasers of a part of the unsold land; but I have found but one adjudicated case in which that view has been made the basis of relief except in that class of cases already referred to in which a general scheme of development has been sustained. I refer to the case of *Childs* v. *Douglas, Kay 560;* but the subsequent history of that case, as is pointed out in *Keates* v. *Lyon, L. R. 4 Ch. App. Cas. 218,* destroys the value of that case as a precedent.

But assuming that such an implied purpose may be established by circumstances surrounding the parties to the deed in the absence of some stipulation in the deed indicating the existence of such a purpose, I am convinced that no circumstance exists in this case to justify the affirmative conclusion that the restrictive covenants in the deed of defendant's predecessor in title were for the benefit of subsequent purchasers of the lot now owned by complainant. The lot now owned by complainant is indeed adjacent to the lot of defendant, but in the absence of a general scheme of development that circumstance cannot, in my judgment, be deemed operative to enlarge or define the covenant of the parties in such manner that it can with certainty be said to have been made for the benefit of subsequent purchasers of such adjacent lot. In *Fortescue* v. *Carroll, 76 N. J. Eq. (6 Buch.) 583,* our court of errors and appeals has pointed out with the greatest emphasis that in cases of this class the right of complainant must be entirely clear before a court of equity can be justified in restricting another in the uses to which he may lawfully put his property.

The views herein expressed render unnecessary a considera-
tion of whether it appears with sufficient certainty that the
covenants have in fact been violated.

I will advise a decree denying the relief sought by complain-
ant and dismissing the bill.