67 N.J. Super. 111 (1961)
170 A.2d 52
PAUL R. CAULLETT AND EVELYN CAULLETT, PLAINTIFFS-RESPONDENTS,
v.
STANLEY STILWELL & SONS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 1961.
Decided April 21, 1961.
*113 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Carl Olsan argued the cause for appellant (Mr. Seymour R. Kleinberg, attorney; Mr. Olsan of counsel and on the brief).
Mr. Whitney Crowell argued the cause for respondents (Messrs. Crowell and Crowell, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
This is an action in the nature of a bill to quiet title to a parcel of land in the Township of Holmdel. Defendant appeals from the entry of summary judgment in favor of plaintiffs.
Defendant, a developer, by warranty deed conveyed the subject property, consisting of a lot approximately one acre in size, to the plaintiffs for a consideration of $4,000. The deed was delivered on January 13, 1959. Following the collapse of negotiations directed towards agreement on the construction by defendant of a dwelling on the transferred premises, the present suit was instituted.
The focal point of the action is a recital in the deed, inserted under the heading of "covenants, agreements and restrictions," to the effect that:
"(i) The grantors reserve the right to build or construct the original dwelling or building on said premises."
*114 The item is one of those designated in the instrument as "covenants running with the land * * * [which] shall bind the purchasers, their heirs, executors, administrators and assigns."
In support of their motion for summary judgment, plaintiffs set forth that no contract exists or ever did exist between the parties for the construction of a dwelling or building on the premises. The principal officer of the defendant corporation, in a countering affidavit, stated that one of the foremost considerations in fixing the price of the lot, and one of the primary conditions of the sale as it was effected, was the understanding that when the purchasers declared themselves ready and able to build, defendant would act as general contractor.
The trial judge held that the provision in question was unenforceable and should properly be stricken from the deed. He granted plaintiffs the relief demanded in their complaint, namely, an adjudication that: (1) defendant has no claim, right or interest in and to the lands by virtue of the clause in question; (2) defendant has no interest, right or cause of action against plaintiffs by virtue of the covenant; and (3) the clause in question is stricken from the deed and declared null, void and of no further force and effect.
The central issue argued on the appeal is whether the recital constitutes an enforceable covenant restricting the use of plaintiffs' land. Defendant urges that it comprises an ordinary property restriction, entered into for the benefit of the grantor and his retained lands. Plaintiff maintains that the clause is too vague to be capable of enforcement and that, in any event, it amounts to no more than a personal covenant which in no way affects or burdens the realty and has no place in an instrument establishing and delimiting the title to same.
While restrictive covenants are to be construed realistically in the light of the circumstances under which they were created, Javna v. D.J. Fredericks, Inc., 41 N.J. *115 Super. 353, 358 (App. Div. 1956), counter considerations, favoring the free transferability of land, have produced the rule that incursions on the use of property will not be enforced unless their meaning is clear and free from doubt, Hammett v. Rosensohn, 46 N.J. Super. 527, 535-536 (App. Div. 1957), affirmed 26 N.J. 415 (1958); Bruno v. Hanna, 63 N.J. Super. 282, 285 (App. Div. 1960); Griscom v. Barcelonne, 90 N.J. Eq. 369 (Ch. 1919); Grossman v. Abate, 19 N.J. Super. 516 (Ch. Div. 1952). Thus, if the covenants or restrictions are vague or ambiguous, they should not be construed to impair the alienability of the subject property. For a concise and cogent discussion of the unenforceability of restrictive covenants because of vagueness, see Sutcliffe v. Eisele, 62 N.J. Eq. 222 (Ch. 1901). Also see Fortesque v. Carroll, 76 N.J. Eq. 583 (E. & A. 1910); Newbery v. Barkalow, 75 N.J. Eq. 128, 133 (Ch. 1909); Wilson v. Ocean Terrace Garden Apartments, Inc., 139 N.J. Eq. 376, 380 (Ch. 1947).
Approached from a direction compatible with the constructional principles set forth above, it is clear that the deed item in question is incapable of enforcement and is therefore not restrictive of plaintiffs' title. The clause is descriptive of neither the type of structure to be built, the cost thereof, or the duration of the grantees' obligation. While it might conceivably have been intended to grant to defendant a right of first refusal on construction bids on the property, this is by no means its palpable design. What, for example, would be its effect were plaintiffs to erect a structure by their own hands?
It must be remembered that a restrictive covenant is in its inception a mere contract, subject to the interpretative doctrines of contract law which focus on the parties' mutual purpose. See 3 Williston, Contracts (rev. ed. 1936), § 620, pp. 1787-88, nn. 5 and 6. A purported contract so obscure that no one can be sure of its meaning is incapable of remedy at law or equity for its alleged breach, cf. Bethlehem Engineering Export Co. v. Christie, 105 F.2d 933, *116 125 A.L.R. 1441 (2 Cir. 1939), and therefore cannot constitute a valid impediment to title.
Moreover, assuming arguendo that the clause is sufficiently definite to give defendant a primary option to build whenever plaintiffs should decide to construct a dwelling or building on the premises, it still cannot operate either as a covenant running with the land at law, or as an equitable servitude enforceable against the original grantee and all successors, having notice, to his interest.
In the first place, it is clear to us that the item in question does not satisfy the primary requirement of covenants directly restrictive of title to land  that they "touch and concern" the subject property. To constitute a real rather than a personal covenant, the promise must exercise direct influence on the occupation, use or enjoyment of the premises. It must be a promise "respecting the use of the land," that is, "a use of identified land which is not merely casual and which is not merely an incident in the performance of the promise." 5 Restatement, Property, Scope Note to Part III, pp. 3147-48 (1944). Furthermore, in the language of the Restatement:
"Even when the promise identifies a specific tract of land as the sphere of action contemplated by it, the use of the land may be so incidental in the performance of the promise, or the promised action may be of such a casual and temporary character, as to prevent the promise from being a `promise respecting the use of land' * * *. The use of land involved must be a primary consideration of the undertaking of which the promise is a part and the promise must contemplate a degree of permanency in the particular use. * * * [T]he use of land involved is too casual to bring the promise of either party within the scope of promises respecting the use of land * * * [in the case of] a promise to permit the draining through the land of the promisor upon a single occasion of a pond upon the land of the promisee." (Ibid., at pp. 3150-51.)
In substantial accord with the Restatement analysis are Dunn v. Ryan, 82 N.J. Eq. 356 (E. & A. 1913), and Butterhof v. Butterhof, 84 N.J.L. 285 (E. & A. 1913), holding that the breach of deed provisions, to the effect that the *117 grantee would provide support and maintenance for the grantor during the latter's natural life, does not affect the fee conveyed but at most gives rise to an action for damages for failure to perform a collateral covenant.
Thus, to qualify as a covenant properly affecting the subject property, the deed provision must define in some measurable and reasonably permanent fashion the proscriptions of and limitations upon the uses to which the premises may be put. Typical provisions, some of them included in the deed of the parties herein, limit the property to residential purposes, provide minimum setback and acreage requirements, proscribe certain architectural forms, and limit the number or set the minimum cost of future dwellings to be constructed on the land.
The provision here in issue is not of the variety described above. It pertains to the use of plaintiffs' land only in the very incidental fashion that refusal to allow defendant to build the original structure would seemingly preclude plaintiffs from constructing at all. This is at best a personal arrangement between the two parties, designed to insure defendant a profit on the erection of a dwelling in return, allegedly, for a comparatively low sales price on the land. While there is nothing in our law precluding such an arrangement, as a contract inter partes, this form of contract, contemplating a single personal service upon the property, does not affect the title. And the stipulation between the parties in their instrument to the effect that this was a covenant running with the land cannot override the inherently personal nature of their arrangement under established legal principles.
We note, in addition, that even if the deed clause were to be construed as directly restricting plaintiffs' use of their land, i.e., prohibiting erection of a structure until such time as the owner shall permit such construction to be performed by the grantor, the clause would nonetheless comprise neither a legal restriction nor an equitable servitude upon the estate. This is so because whatever the *118 effect of the burden of the covenant, its benefit is clearly personal to the grantor, securing to him a mere commercial advantage in the operation of his business and not enhancing or otherwise affecting the use or value of any retained lands.
Generally prerequisite to a conclusion that a covenant runs with the land at law is a finding that both burdened and benefited properties exist and were intended to be so affected by the contracting parties. Where, however, the benefit attaches to the property of one of the parties, the fact that the burden is in gross, i.e., personal, does not preclude the covenant from running with the land conveyed. National Union Bank at Dover v. Segur, 39 N.J.L. 173 (Sup. Ct. 1877). There is no public policy opposed to the running of a benefit, since a continuing benefit is presumed to help rather than hinder the alienability of the property to which it is attached. 5 Powell, Real Property, § 675, p. 173; 5 Restatement, Property, supra, § 543, comment (c), pp. 3255-56. When, however, as here, the burden is placed upon the land, and the benefit is personal to one of the parties and does not extend to his or other lands, the burden is generally held not to run with the land at law. The policy is strong against hindering the alienability of one property where no corresponding enhancement accrues to surrounding lands. See 5 Restatement, Property, supra, § 537, pp. 3218-24; 2 American Law of Property, § 9.13, pp. 373-76 (1952).
Nor can the covenant be enforced as an equitable servitude where the benefit is in gross and neither affects retained land of the grantor nor is part of a neighborhood scheme of similar restrictions. Purporting to follow the case of Tulk v. Moxhay, 2 Phil. 774, 41 Eng. Rep. 1143 (Ch. 1848), our courts have consistently enforced the covenantal rights of an owner of benefited property against a successor, with notice, to the burdened land, even though the covenant did not run with the land at law. De Gray v. Monmouth Beach Club House Co., 50 N.J. Eq. 329 (Ch. 1892), affirmed 67 N.J. Eq. 731 (E. & A. 1894); Cotton v. Cresse, 80 *119 N.J. Eq. 540 (E. & A. 1912); Coudert v. Sayre, 46 N.J. Eq. 386, 395 (Ch. 1890). However, the right to urge enforcement of a servitude against the burdened land "depends primarily on the covenant's having been made for the benefit" of other land, either retained by the grantor or part of a perceptible neighborhood scheme. Hayes v. Waverly & Passaic R.R. Co., 51 N.J. Eq. 345, 348 (Ch. 1893); Cornish v. Wiessman, 56 N.J. Eq. 610, 611-12 (Ch. 1896); Roberts v. Scull, 58 N.J. Eq. 396, 401 (Ch. 1899); Morrow v. Hasselman, 69 N.J. Eq. 612, 614 (Ch. 1905); Lignot v. Jackle, 72 N.J. Eq. 233, 241 (Ch. 1906); Lister v. Vogel, 110 N.J. Eq. 35, 40 (E. & A. 1932). Where the benefit is purely personal to the grantor, and has not been directed towards the improvement of neighboring properties, it cannot pass as an incident to any of his retained land and therefore is not considered to burden the conveyed premises but only, at best, to obligate the grantee personally. See 2 Tiffany, Real Property, § 399, pp. 1441-42 (1920).
The latter doctrine has recently come under considerable criticism, see 2 American Law of Property, supra, § 9.32, pp. 428-30, and has even been rejected in some jurisdictions, thus permitting attachment of an equitable servitude even though the benefit is in gross. See, e.g., Pratte v. Balatsos, 99 N.H. 430, 113 A.2d 492 (Sup. Ct. 1955). But the law in this jurisdiction, as last authoritatively declared, is that "from the very nature of the equitable restriction arising from a restrictive covenant," the "existence of the dominant estate is * * * essential to the validity of the servitude granted * * *." Welitoff v. Kohl, 105 N.J. Eq. 181, 189 (E. & A. 1929).
We therefore conclude that the clause in question, even were we to assume both its clarity and its direct operation upon the use of plaintiffs' land, cannot comprise an impairment of plaintiffs' title, because of the indisputably personal nature of the benefit conferred thereby. An intention to dispense broader land use benefits, in the form of a neighborhood *120 scheme, cannot here be found, as in effect conceded by defendant and as expressly stipulated in the parties' deed.
Defendant raises the defense of "unclean hands," claiming that plaintiffs' alleged refusal to go through with their asserted promise, respecting the construction of a dwelling on the property by defendant, constitutes inequitable conduct barring their effort to obtain relief in equity upon the same transaction. This argument is without merit. Because of the vagueness and uncertainty of the alleged agreement, adverted to hereinabove, it is impossible to determine whether plaintiffs acted in good or in bad faith in not permitting defendant to erect a dwelling. In short, the very obscurity of the obligation asserted by defendant precludes definition of a standard by which to measure plaintiffs' conduct. We note, moreover, that according to the affidavit of defendant's principal officer, the parties attempted over a period of several months to negotiate a mutually satisfactory agreement. Thus, this is not a case in which the plaintiff merely turned his back on a provision whose insertion in the instrument he had previously approved. Furthermore, the social interest in promoting alienability of property might well be a factor militating in favor of striking this covenant, even against a provable assertion of "unclean hands." But we have no occasion to decide such a question here in view of the foregoing.
The right of plaintiffs to bring an action to quiet title, where the alleged restriction is in reality unenforceable, is questioned. But it is clear that such actions, N.J.S. 2A:62-1, may be instituted to clear the title instrument of excess verbiage having the practical effect of inhibiting the transferability of the estate. Courts will not be blind to the understandable reluctance of title companies to insure in the face of a questionable and somewhat anomalous deed provision, and to the even greater unwillingness of prospective purchasers to accept an uninsurable title. The action was a proper one under the statute.
*121 Defendant asserts that this action is basically one for rescission of the contract and that plaintiffs should restore defendant to status quo by reconveying the property in return for the consideration paid therefor. But we do not analyze the action as one for rescission. It purports to be, and is, in the nature of a bill to quiet title. Nor can we entertain defendant's alternative request for leave to amend its answer to seek rescission. No such request was made below and there is no proper basis for permitting it at this stage of the litigation.
The judgment of the trial court is affirmed.