96 N.J. Super. 464 (1967)
233 A.2d 385
JOSEPH A. MINCH AND MARIE MINCH, HIS WIFE, PLAINTIFFS,
v.
CATHERINE E. SAYMON, WIDOW, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 24, 1967.
*465 Mr. Aristo Dallavalle, attorney for plaintiffs.
Messrs. Sauer & Kervick, attorneys for defendants (Mr. James F. Kervick, appearing).
HERBERT, J.S.C.
Plaintiffs have sued for relief against a covenant which by its terms limits the use of their property to a residential site for no more than three families. The property is at 20 Riverside Drive in Cranford and has a frontage of approximately 100 feet on that street. The covenant originated in a deed dated November 4, 1944 from Florine Beardslee to Benjamin H. Saymon and his wife Catherine. It was in the following form:
"And the parties of the second part, for themselves, their heirs and assigns, hereby covenant, promise and agree to and with the party of the first part, and her heirs and assigns, that they will not suffer or permit said premises to be used for any purpose other than a private dwelling place."
*466 On the date of her deed to Mr. and Mrs. Saymon, Mrs. Beardslee owned no other real estate in the vicinity of the property conveyed. She never acquired any subsequently. The absence of any other property of Mrs. Beardslee's which could be protected by enforcement of the covenant is a fact on which plaintiffs rely heavily. The case has its complications, however. Some years before 20 Riverside Drive was sold to the Saymons, Mrs. Beardslee had owned adjacent property and had conveyed part of it to her daughter Eleanor B. Haines and had conveyed another part to her daughter Frances B. Heston. In 1938 Mrs. Haines and Mrs. Heston conveyed the lands which they had thus acquired from their mother to a corporation, English Village, Inc. Promptly thereafter the corporation built a very large apartment house upon, or partly upon, the former Haines-Heston lands. The apartment house is several stories high, forms a quadrangle and is called English Village. Individual apartments on the side of the quadrangle which faces the rear line of plaintiffs' property have a view of the Rahway River which flows just beyond Riverside Drive. The view would be cut off, of course, if a sizable apartment building were erected on plaintiffs' property.
When the covenant was inserted in the Saymon deed of November 4, 1944, Mrs. Haines and Mrs. Heston owned a majority of the shares of stock of English Village, Inc., which in turn was the owner of the large apartment house called English Village. After selling the home at 20 Riverside Drive to the Saymons, Mrs. Beardslee and her husband moved into one of the apartments, but their windows did not look out over their former home so it cannot be said that the covenant was taken for the benefit of Mrs. Beardslee's leasehold in English Village.
Other indications of the close connection between the Beardslee family and English Village, Inc. are these: Mr. Beardslee for a considerable period of time was president of the corporation and held that office at the time plaintiffs acquired title to 20 Riverside Drive, and down to the present *467 time Mrs. Heston and Mrs. Haines and members of their immediate families have in the aggregate held more than half of the corporate stock. At the trial there was testimony from Mr. Heston, who is now the president of English Village, Inc. and has been a director since its formation. He said, among other things, that the restriction was inserted in the Saymon deed in an attempt to protect English Village.
The covenant which originated in the Beardslee-Saymon deed of November 1944 has been given formal recognition several times since. On November 8, 1954 Mr. and Mrs. Beardslee executed and delivered to Mrs. Saymon  by this time a widow  a formal instrument authorizing conversion of the house located at 20 Riverside Drive into a two-family dwelling. This grant was not recorded. On August 1, 1956 Mr. and Mrs. Beardslee executed and delivered to Mrs. Saymon another form of instrument authorizing in some detail certain structural changes designed to make the residence usable by two families. This instrument was recorded on September 25, 1956. It contained this language, located just above the signatures:
"* * * said changes and modifications of said covenants and restrictions to run with the land and except as herein and by the aforesaid grant changed and modified, the parties hereto ratify and confirm the aforesaid covenants and restrictions contained in the aforesaid deed dated November 4, 1944.
The parties hereto reaffirm an express intent to restrict the use of said premises to residential use and for a dwelling place of not more than two families."
It appears that the modification agreement of August 1, 1956 was probably obtained by Mrs. Saymon in relation to a conveyance which she had contracted to make to Mr. Minch, one of the plaintiffs. On July 5, 1956 she and Mr. Minch had signed a contract of purchase and sale. One of the provisions of the contract was:
"The within conveyance to be made expressly subject to the following covenants and restrictions of record, incorporated in the deed, above referred to:
*468 a. The party of the second part for themselves, their heirs and assigns hereby covenant, promise and agree to and with the party of the first part and her heirs and assigns, that they will not suffer or permit said premises to be used for any purpose other than a private dwelling place."
On September 21, 1956 Mrs. Saymon executed a deed to plaintiffs. In spite of language of the contract calling for the restriction in question to be incorporated in the deed, that document is completely silent about any restriction and therefore terminated the contract's requirements. Caparrelli v. Rolling Greens, Inc., 39 N.J. 585, 590 (1963). However, shortly after taking title plaintiffs demonstrated their belief that the covenant had some degree of legal effect; on November 18, 1960 they obtained from Mr. and Mrs. Beardslee a modification agreement permitting changes in the house at 20 Riverside Drive to permit three-family use. This agreement also contains the same language (with minor and unimportant changes of form) quoted above from the agreement of August 1, 1956 running from Mrs. Beardslee and her husband to Mrs. Saymon. Plaintiffs never converted the house for three-family use; that is, they never acted upon the modification grant of November 18, 1960, and that grant was not recorded until July of 1965, apparently after a dispute had arisen over the effectiveness of the covenant.
If Mrs. Beardslee, when she sold to the Saymons, had owned other land in the immediate vicinity, she or her grantees, in the absence of a substantially changed neighborhood, would have a basis for enforcing the covenant in equity. Hemsley v. Marlborough House Co., 68 N.J. Eq. 596 (E. & A. 1905). Having disposed of her last plot by the Saymon deed, however, I think the covenant to which the Saymons agreed when they accepted their deed must be regarded as a personal one, and this in spite of the express language making it binding upon their heirs and assigns and for the benefit of Mrs. Beardslee and her heirs and assigns. Caullett v. Stanley Stilwell and Sons, Inc., 67 N.J. Super. 111 (App. Div. 1961). There is no need to repeat *469 or paraphrase the excellent discussion found in Judge Freund's opinion for the court, but these few excerpts are particularly pertinent:
"Purporting to follow the case of Tulk v. Moxhay, 2 Phil. 774, 41 Eng. Rep. 1143 (Ch. 1848), our courts have consistently enforced the covenental rights of an owner of benefited property against a successor, with notice, to the burdened land, even though the covenant did not run with the land at law.

* * * * * * * *
However, the right to urge enforcement of a servitude against the burdened land `depends primarily on the covenant's having been made for the benefit' of other land, either retained by the grantor or part of a perceptible neighborhood scheme.

* * * * * * * *
Where the benefit is purely personal to the grantor, and has not been directed towards the improvement of neighboring properties, it cannot pass as an incident to any of his retained land and therefore is not considered to burden the conveyed premises but only, at best, to obligate the grantee personally." (at pp. 118-119)
There having been no Beardslee land to be benefited by the covenant when the Saymon deed was delivered in 1944, plaintiffs as grantees of Mrs. Saymon are not subject to enforcement of the covenant even though they had full notice of it. Welitoff v. Kohl, 105 N.J. Eq. 181, 189 (E. & A. 1929).
I have not been referred to nor found any cases in which a grantor imposed a restrictive covenant for the clearly-expressed benefit of a corporate owner of neighboring land in which corporate owner the grantor held stock or in which members of his family held stock. Within the general rules governing contracts for the benefit of third parties there would appear to be no reason why a valid restriction might not be imposed in such a case. See Lister v. Vogel, 110 N.J. Eq. 35 (E. & A. 1931). However, the Beardslee-Saymon covenant contains no hint that it was intended for the benefit of property then owned by English Village, Inc. Plaintiff Joseph Minch testified that when he took title from Mrs. Saymon he knew nothing about the Beardslees. There is no proof that plaintiffs then had any knowledge of *470 any sort of claim that Mrs. Beardslee had inserted a covenant in her deed for the benefit of English Village, Inc. To deny plaintiffs the relief which they seek in this situation would have a burdensome result: A prospective purchaser finding a restrictive covenant in the chain of title and then ascertaining from the record that the covenantee owned no other property in the neighborhood at the date of the covenant would also have to make inquiries about possible corporate owners of neighboring lands in which the covenantee might have had, or the members of his family might have had, a stock interest when the covenant was created. That burden would be too heavy. It should not be imposed in the present case where the record title fails to give any indication that the covenant was intended for the benefit of the property of English Village, Inc. or any other property. Klein v. Sisters, etc., Saint Elizabeth, 101 N.J. Eq. 761, 769 et seq. (E. & A. 1927).
The grant of November 18, 1960 by which plaintiffs obtained from Mrs. Beardslee and her husband permission to make alterations for and maintain a three-family house does not call for a different result. In obtaining that grant plaintiffs assumed that they were bound by the Beardslee-Saymon covenant, when in fact they were not so bound. They thought they were getting concessions from the Beardslees in return for their adoption of the restrictive covenant. In fact, there were no concessions because there was nothing to concede. However, the instrument is under seal and therefore imports a consideration, or needs no consideration. 1 Williston, Contracts (3d ed. 1957), § 217, p. 790. After explaining that a covenant needs no consideration, the author there goes on to say:
"However, equity will not specifically enforce or otherwise aid the covenantee of the voluntary covenant, but will leave him to his remedy at law, except in a few cases, thus classified: * * *."
The classifications which follow do not include covenants restricting the use of land.
*471 My ultimate conclusion is that plaintiff's property at 20 Riverside Drive, Cranford, is not subject to the restrictive Beardslee-Saymon covenant nor is it subject to a three-family restrictive covenant by reason of plaintiffs' own participation in the modification agreement of November 18, 1960. I do not, of course, pass upon any question as to possible personal liability of plaintiffs at law by reason of the agreement of November 18, 1960.
If the restrictive covenant were otherwise enforceable in equity, there might well be reasons here for not granting enforcement if a suit were brought for that purpose. There appears to be three plots of land in the block fronting upon Riverside Drive in which plaintiffs' property is located. Theirs is the central plot. On one side of them a large apartment house has been constructed since the creation of the covenant in question. Between that apartment house and the English Village is another large building which bears no resemblance to a one-family residence. On the other side of plaintiffs' house is a large structure formerly used as a one-family residence but now occupied by the American Legion. In short, there have been substantial changes in the neighborhood since 1944 which in themselves might persuade a court of equity that the restriction, if it were otherwise enforceable, should not now be enforced by an injunction.
It should be noted that English Village, Inc. was added to the case as a party defendant at the commencement of the trial. This was done on motion of counsel for the other defendants, who also represents English Village, Inc. Thus there was eliminated any possible question of procedure arising out of a failure to have before the court the alleged beneficiary of the restrictive covenant.
Plaintiffs are not entitled to any relief against Mrs. Saymon on the warranties contained in her deed to them.