920 A.2d 782 (2007)
392 N.J. Super. 412
Raymond G. PERELMAN, Plaintiff-Appellant,
v.
Nicholas CASIELLO, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 2006.
Decided April 26, 2007.
*783 Barry L. Katz of the Pennsylvania Bar, Bala Cynwyd, PA, admitted pro hac vice, argued the cause for appellant (Hollstein Keating Cattell Johnson & Goldstein, attorneys; Stuart M. Goldstein, Philadelphia, PA and Mr. Katz, on the brief).
Eric G. Fikry, Cherry Hill, argued the cause for respondent (Obermayer Rebmann Maxwell & Hippel, attorneys; Stephen D. Schrier and Mr. Fikry, of counsel and on the brief).
Before Judges LISA, HOLSTON, JR. and GRALL.
The opinion of the court was delivered by
GRALL, J.A.D.
Plaintiff Raymond G. Perelman and defendant Nicholas Casiello are owners *784 of adjacent ocean-front property in Atlantic City. Restrictive covenants in their respective chains of title establish a setback that runs parallel to and over 100 feet inland from the boardwalk and prohibit construction of more than one residence. Plaintiff commenced this action for declaratory and injunctive relief to enforce the covenants in defendant's deed. The trial court granted summary judgment in favor of defendant on the ground that the restrictive covenant in defendant's chain of title was a personal promise from the original grantee to the original grantor. Plaintiff appeals.[1]
We conclude that defendant purchased his property with knowledge of restrictive covenants in his chain of title, that the original grantee and grantor intended to burden defendant's land and benefit plaintiff's, and that the right to enforce those covenants transferred to plaintiff with ownership of the property benefited. We further conclude that plaintiff may enforce the restrictive covenants, unless changed conditions that frustrate the purpose of the restriction or equities that make enforcement unjust under the circumstances preclude that relief. Accordingly, we reverse and remand for further proceedings.
The pertinent facts are as follows. In 1917 Mahlon W. Newton owned ocean-front property in Atlantic City. The property consisted of two rectangular parcels of the same dimension  eighty-five feet running parallel to the ocean and 272.3 feet from that line running inland toward Atlantic Avenue.
In 1917 Newton sold Sharp the lot south of the common 272.3 foot boundary (the Newton-Sharp lot). Defendant now owns a portion of the Newton-Sharp lot. The Newton-Sharp deed describes the property conveyed as subject to covenants limiting its use and establishing the setback:
[The conveyance is] SUBJECT, nevertheless, to the following covenants and conditions which are hereby made a part of the consideration of this conveyance: That party of the second part [Sharp], his heirs and assigns, shall not at any time hereafter, erect upon the hereby granted premises, more than one building, which shall be used for no other purpose than as a place of residence, and shall not permit any out buildings of any nature to be erected upon said lot, and that the building erected upon said premises, shall not be nearer than six feet of the sidelines of said lot, or the rear lines of said lot, and that it shall be on a line on the Ocean side of the lot, with the residence of Mrs. Helen N. Farr, and on Montgomery Avenue, shall be kept back from the property line, the same distance as Robert C. Kolb's house, and in a line with said Kolb's house.

[Emphasis added.]
When Newton sold to Sharp, he retained the lot north of the common boundary (the Newton-Snowden lot). Prior to his death, Newton sold and repurchased that lot twice. Plaintiff concedes that none of the conveyances involved in those four transactions were by deed that either referenced the restrictive covenants in the Newton-Sharp deed or included similar *785 covenants.[2] In 1929 after Newton's death, his heirs conveyed the lot to Snowden.
The Newton-Snowden deed contains restrictive covenants similar to the ones contained in the Newton-Sharp deed. It provided:
SUBJECT, nevertheless, to the following covenants and conditions which are hereby made a part of the consideration of this conveyance;
THAT party of the second part [Snowden], his heirs and assigns, shall not at anytime hereafter, erect upon the hereby granted premises more than one building, which shall be used for any other purpose than as a place of residence, and shall not permit any out-buildings of any nature to be erected upon said lot, and that the building erected upon said premises shall not be nearer than six feet of the said lines of said lot, or the rear lines of said lot, and that it shall be on a line on the Ocean side of the lot with the residence of Edwin A. Bookmyer, and on Plaza Place, shall be kept back from the building line of the same distance as Forrest B. English's house and in a line with said English's house;

PROVIDED, however, that a garage may be erected thereon so long as the same shall be a part of said residence, and provided further that the foregoing restriction, as to the number of buildings to be erected upon the said premises shall apply only so long as the Boardwalk remains in its present location.

[Emphasis added.]
Plaintiff purchased the property conveyed by the Newton-Snowden deed in 1986.[3] He was aware of the restrictive covenants in his deed and of the similar covenants in the Newton-Sharp deed. Plaintiff's property includes a single residence, which is behind the setback. It also includes a swimming pool and a pool house, both of which intrude into the setback.
In June 1999 defendant purchased a portion of the Newton-Sharp lot from Bradway, a successor to Sharp's title. Bradway had subdivided the Newton-Sharp lot into four lots in 1983. Bradway sold two of the inland lots to a purchaser who is not a party to this action; there is one residence on that parcel, which does extend into the setback established in the Newton-Sharp deed. Bradway retained two lots, closer to the ocean, which were undeveloped. Those are the lots that he sold to defendant in 1999.
Defendant's lots are rectangular, and each runs for a distance of eighty-five feet parallel to the boardwalk. The first is adjacent to the boardwalk and extends inland for fifty feet along the south property line of the Newton-Snowden property. The second lot runs eighty-five feet along the inland border of the first. It extends inland from that border fifty feet along the south property line of the Newton-Snowden property.
When defendant purchased in 1999, he was aware of the restrictive covenants in the Newton-Sharp and Newton-Snowden deeds. He knew that Bradway had been unable to find a willing buyer due to questions about the covenants in the Newton-Sharp deed. He paid $215,000 for the land, a price that he acknowledges was *786 discounted because of the covenants. The agreement of sale between defendant and Bradway provides: "The Seller agrees to transfer and the Buyer agrees to accept ownership of the Property free of all rights and claims of others except for: . . . any recorded agreements which limit the use of the Property to the construction of one Dwelling Unit or provide for building setbacks." Although the lots remain undeveloped, defendant purchased title insurance that protects him in the event that the restrictive covenants in the Newton-Sharp deed are enforced.
Plaintiff contends that the restrictive covenants in the Newton-Sharp deed were intended, by Newton and Sharp, to burden the Newton-Sharp lot for the benefit of the lot that Newton retained and Newton's heirs sold to plaintiff. He identifies the benefit to the Newton-Snowden lot as a view from that property across the Newton-Sharp lot. The Newton-Snowden lot would not have had that benefit without a restrictive covenant that prohibited Sharp, his heirs and assigns from erecting a residence in the setback established. See Bubis v. Kassin, 323 N.J.Super. 601, 616, 733 A.2d 1232 (App.Div.1999) (noting that "in the absence of a restrictive covenant, a property owner has no right to an unobstructed view across a neighbor's property"). Plaintiff argues that the trial court erred in concluding that the restrictive covenants were personal to Newton and contends that the benefit of the covenant, and the right to enforce it, was transferred to him with the Newton-Snowden lot.
Our courts have recognized the following principles relevant to this case. A grantor may, by covenant in a deed, restrict the use of land conveyed for the benefit of land retained and bind the grantee and his or her successors in title who take with notice. See Caullett v. Stanley Stilwell & Sons, Inc., 67 N.J.Super. 111, 118-19, 170 A.2d 52 (App.Div. 1961); Javna v. D.J. Fredricks, Inc., 41 N.J.Super. 353, 359, 125 A.2d 227 (App. Div.1956); Riverton Country Club v. Thomas, 141 N.J.Eq. 435, 446-47, 58 A.2d 89(Ch.), aff'd o.b., 1 N.J. 508, 64 A.2d 347 (1948); 13 New Jersey Practice, Real Estate Law and Practice § 18.2, at 500 (John A. Celentano, Jr.) (2d ed. 2002). Determining whether such a covenant, which is a contract at least at its inception, runs to the successors of the original grantee requires examining the intent of the original grantor and grantee. See Caullett, supra, 67 N.J.Super. at 115, 170 A.2d 52; Javna, supra, 41 N.J.Super. at 359, 125 A.2d 227. While such restrictive covenants are not favored and are strictly construed where there is ambiguity, courts determine and give effect to the intent of the parties expressed in the deed with reference to the attendant circumstances. Riverton, supra, 141 N.J.Eq. at 440-41, 58 A.2d 89. Absent intent to impose a burden of limited duration or for the benefit of an individual, changed conditions that frustrate the purpose of the restriction, or equities that make enforcement unjust or require modification, covenants that the parties intend to burden one property for the benefit of another property are deemed to be servitudes that run with the land benefited and burdened and transfer with its ownership. See generally Restatement (Third) of Property: Servitudes §§ 1.1, 1.3, 1.5, 2.1-.2, 2.5, 2.11, 4.1-.5, 5.1-.2, 7.1, 7.10, 8.1 (2000).
In this case, the Newton-Sharp deed is clear and unambiguous with respect to the parties' intention to burden the Newton-Sharp lot regardless of change in the ownership of that lot and for an indefinite period of time. The opinion in Riverton, which was affirmed and adopted by the Supreme Court, is instructive because of *787 similarities between the Newton-Sharp deed and the deeds at issue in that case. 1 N.J. at 508, 64 A.2d 347.[4] Sharp took title by deed "SUBJECT, nevertheless" to restrictions concerning building and use  prohibitions against construction of more than one residence and intrusion of that residence into the setback established. Riverton Country Club took "subject, nevertheless" to a restriction on alcoholic beverages stated in its deeds. 141 N.J.Eq. at 445, 58 A.2d 89; see Restatement, supra, § 2.2 comment d (noting the terms "subject to" are indicative of intent to create a servitude or disclose a preexisting servitude). In both cases, the deeds state that the restrictions are part of the consideration for the conveyance. Id. at 443, 58 A.2d 89; see Restatement, supra, § 2.11 comment f (noting that consideration paid is relevant to a determination of intention). In both cases, the deeds describe those bound by the restriction as the grantee, "his heirs and assigns." Id. at 438, 58 A.2d 89. In both cases, the deeds describe a restriction of continuing duration by prohibiting specified conduct "any time hereafter." Ibid. In Riverton the judge concluded, "The restrictive provision is so clearly and certainly expressed that I cannot escape the conclusion the parties understood and intended its prohibition to extend indefinitely into the future." Id. at 442, 58 A.2d 89.
We reach the same conclusion here. Under the terms of the deed it is clear that Sharp, as part of the consideration paid for his lot, agreed to restrict his use of the land, and that of his heirs and assigns, in accordance with the covenants and from the date of the deed and thereafter. Defendant took the lot with knowledge of the burdens clearly imposed upon the owners of the property. Thus, with respect to the burden of the restrictive covenants imposed on owners of the Newton-Sharp lot, there is no need to look beyond the strict meaning of the terms of the Newton-Sharp deed. Moreover, even if one were to look to the attendant circumstances, the circumstances do not give rise to an inference that calls into question the intention clearly expressed in the deed. See Restatement, supra, § 2.11 comment c (noting that courts, rightfully, are more hesitant to infer a grantee's intent to burden his or her land than to infer the grantor's intention to benefit retained land). Here, because Sharp agreed to restrict his use and that of his heirs and assigns for an indefinite period, there is no perceptible risk of imposing a servitude beyond that to which Sharp agreed and of which defendant had notice. See ibid.
Although the Newton-Sharp deed does not identify the beneficiary of the restrictive covenants, it is reasonable to infer that the intended beneficiary is the adjacent Newton-Snowden lot and not Newton personally. The intended beneficiary of a restrictive covenant may be inferred from the facts and circumstances of the transaction. Id. at § 2.11(b). Under a practical and common sense view of the circumstances of this transaction, the benefit of this restriction is apparent  preservation of the view of the ocean from the Newton-Snowden lot across the Newton-Sharp lot. See Bubis v. Kassin, 184 N.J. *788 612, 625, 878 A.2d 815 (2005) (determining the type of "fence" prohibited by a restrictive covenant in accordance with a "common sense" interpretation of the benefit intended). The benefit is one that Newton and Sharp would expect to have no value to Newton after any subsequent sale of the Newton-Snowden lot. Conversely, they would expect that the benefit of the continued restriction would have great value to a subsequent owner of the Newton-Snowden lot. Such a benefit, which inures to the owner or occupier of land, is generally deemed appurtenant to the land because it is tied to ownership or occupancy. Id. at §§ 1.5(1), 4.5; see also id. at § 2.11 & comment g and illustrations 2, 4.
The Court of Errors and Appeals found a restrictive covenant to be appurtenant to the land and concluded that it transferred with the ownership of that land in Hemsley v. Marlborough House Co., 68 N.J.Eq. 596, 61 A. 455 (E. & A.1905). The Court construed a deed in which the grantor, who held nearby land, restricted building on a specified area of the land that she conveyed. Id. at 597, 61 A. 455. No building could be erected in that area without her consent or the consent of her heirs. Ibid. Considering the location of the properties, the Court concluded that light, air and view of the ocean from the grantor's property were the obvious intended benefits of the restrictive covenant. Id. at 599, 61 A. 455. The Court concluded that the "necessary implication" was that the parties to the transaction intended to extend the benefit to the grantor and her heirs only as the owners of property. Ibid. On that ground, the Court concluded "that this right [(i.e., the right to consent or withhold consent to construction of a building in the restricted area)] is an appurtenant to [the grantor's] property and passed with it by the conveyance made to the [subsequent owner of that property]." Id. at 600, 61 A. 455.
Under the rule established in Hemsley, the benefit from the restrictive covenants at issue here are properly deemed to be appurtenant to and transferred with ownership of the Newton-Snowden lot. We do not suggest that appurtenant benefits can never be deemed personal, but in this case nothing in the deed or the circumstances attending the transaction suggests that Newton and Sharp intended a benefit personal to Newton. See Restatement, supra, § 1.5 comment a; cf. McNichol v. Townsend, 73 N.J.Eq. 276, 279, 67 A. 938 (Ch. 1907) (concluding that the evidence was insufficient to permit a finding that the restriction was intended for the benefit of land that was not adjacent to the burdened property).
In concluding that the restrictive covenants in this case were personal to Sharp and Newton and not enforceable by plaintiff, the trial court relied upon Sailer v. Podolski, 82 N.J.Eq. 459, 462-65, 88 A. 967 (Ch.1913). The restrictive covenants at issue in Sailer, which are quoted in Sailer v. Podolski, 81 N.J.Eq. 327, 328-29, 87 A. 458 (Ch.1913), did not extend to the "heirs and assigns" of the grantee. Further, unlike the restrictive covenants at issue here, which restrict building in the setback "at any time hereafter," the restrictive covenant at issue in Sailer did not address the duration of the restriction. As the court in Sailer noted, a promise from the grantee extending to anyone other than the grantor was not inferable in that case. 82 N.J. Eq. at 463, 88 A. 967. The case is distinguishable on the basis of the terms of the deed at issue.
We do not deem it significant that Newton conveyed and repurchased the Newton-Snowden lot twice without reference to the restrictions in the Newton-Sharp deed. Subsequent sales of the retained property say little about Newton's *789 intent to preserve the view from the adjacent property he retained at the time he conveyed to Sharp. See id. at 464, 88 A. 967. A restrictive covenant need not be mutually beneficial in order to run with the property burdened and the property benefited. See, e.g., Hemsley, supra, 68 N.J.Eq. at 597-600, 61 A. 455. The question of mutuality is relevant in cases involving neighborhood schemes, but plaintiff does not contend that his right to enforce the restriction is based upon creation of a neighborhood scheme. See Olson v. Jantausch, 44 N.J.Super. 380, 386, 130 A.2d 650 (App.Div.1957) (noting that restrictions that are imposed by virtue of a neighborhood scheme must be universal, reciprocal and reasonably uniform).[5]
For the foregoing reasons, we conclude that the trial court erred in granting summary judgment on the ground that plaintiff could not enforce the servitude restricting defendant's use of the land, which defendant purchased with full knowledge of the restriction in his chain of title. Plaintiff's right to enforce the restriction imposed for the benefit of his property is not doubtful. See Javna, supra, 41 N.J.Super. at 361, 125 A.2d 227.
The conclusion that plaintiff has the right to enforce the restrictive covenant does not end the inquiry. Hemsley, supra, 68 N.J. Eq. at 601, 61 A. 455 (concluding that although subsequent owner of land benefited had the right to enforce the restrictive covenant, strict enforcement would be inequitable under the circumstances of the case). The question remains whether plaintiff's conduct, changed circumstances or the relevant equities preclude enforcement or warrant modification of the restrictive covenant. See Weinstein v. Swartz, 3 N.J. 80, 89-90, 68 A.2d 865 (1949); Cooper River Plaza East, LLC v. Briad Group, 359 N.J.Super. 518, 529-32, 820 A.2d 690 (App.Div.2003); Bubis v. Kassin, 353 N.J.Super. 415, 425-26, 426 n. 2, 803 A.2d 146 (App.Div.2002); Roehrs v. Lees, 178 N.J.Super. 399, 410, 429 A.2d 388 (App.Div.1981); Restatement, supra, §§ 7.1, 7.10; cf. Davidson Bros., Inc. v. D. Katz & Sons, Inc., 121 N.J. 196, 210-15, 579 A.2d 288 (1990) (discussing changed circumstances in the context of a "noncompetition covenant").
Although the trial court and the attorneys for the parties viewed the properties, the court did not address any issue beyond plaintiff's ability to seek enforcement. Concluding that plaintiff did not establish his right to enforce the restrictive covenant, the trial court simply noted that it "was not convinced" that a weighing of the equities would result in a grant of the relief plaintiff seeks. Under the circumstances, it is appropriate to remand so that the judge may consider bars to enforcement.
Reversed and remanded for further proceedings. We do not retain jurisdiction.
NOTES
[1] By order dated August 22, 2003, Barry L. Katz, Esq., a member of the Pennsylvania Bar, was admitted pro hac vice to serve as plaintiff's attorney. Although defendant did not move to dismiss plaintiff's appeal, in his brief he urges this court to take that action because the notice of appeal was not signed by New Jersey counsel. See R. 1:21-2(c)-(d). The defect has been cured. Accordingly, we accept the amended notice of appeal as if filed within time. See In re Adoption of a Child by P. and Wife, 114 N.J.Super. 584, 587-88, 277 A.2d 566 (App.Div.1971); R. 2:4-4.
[2] The copies of these deeds that are included in the joint appendix on appeal are not legible.
[3] On appeal, defendant does not argue that the variance between the two deeds with respect to the name of the owners of the residences referenced to establish the setback line creates an ambiguity with respect to the identity of the setback line established by the restrictive covenant in the Newton-Sharp deed.
[4] In Riverton the Country Club took by three separate deeds from the three property owners who conveyed the land that became Riverton Country Club. In that case, the restrictions were stated as a condition subsequent, violation of which would result in a forfeiture and the court found the deed adequate to meet the higher standards applicable to conditions subsequent. 141 N.J. Eq. at 440-43, 58 A.2d 89. See Restatement, supra, § 2.2 comments e and f (discussing the relationship between defeasible fees subject to a condition subsequent and servitudes).
[5] The obvious benefit of the restrictions in plaintiff's chain of title to the property now held by defendant is apparent and likely relevant to the equities.